J-S38037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAURICE ANDREWS | : | |
| | : | |
| Appellant | : | No. 1287 EDA 2025 |

Appeal from the PCRA Order Entered April 28, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004380-2013

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED DECEMBER 23, 2025**

Appellant, Maurice Andrews, appeals *pro se* from the post-conviction court's April 28, 2025 order dismissing, as untimely, his second petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The facts underlying Appellant's convictions are not germane to our disposition of his instant appeal. We need only note that, in June of 2014, Appellant was convicted by a jury of third-degree murder, carrying a firearm without a license, and criminal trespass. On October 7, 2014, he was sentenced to an aggregate term of 35 to 70 years' incarceration. This Court affirmed Appellant's judgment of sentence on April 15, 2016. ***Commonwealth v. Andrews***, 145 A.3d 781 (Pa. Super. 2016) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

Appellant thereafter filed his first, counseled PCRA petition on February 15, 2017. That petition was dismissed, and on appeal, this Court affirmed the PCRA court's order in part, but vacated the portion of the court's order dismissing a certain ineffectiveness claim raised by Appellant. **See Commonwealth v. Andrews**, No. 2325 EDA 2017, unpublished memorandum at 14 (Pa. Super. filed Sept. 6, 2018). We remanded for further proceedings before the PCRA court. **Id.** Ultimately, the court conducted an evidentiary hearing on Appellant's ineffectiveness claim, after which it issued an order once again dismissing his petition. **See** PCRA Court Opinion (PCO), 6/11/25, at 2. Appellant filed another appeal with this Court, and on May 11, 2020, we affirmed the order dismissing his first petition. **See Commonwealth v. Andrews**, 237 A.3d 441 (Pa. Super. 2020) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.

On March 21, 2025, Appellant filed the *pro se* PCRA petition underlying his instant appeal. On April 3, 2025, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition. Appellant filed a *pro se* response to the Rule 907 notice on April 22, 2025. However, on April 28, 2025, the court issued an order dismissing his petition.

Appellant filed a timely, *pro se* notice of appeal on May 14, 2025. He and the court thereafter complied with Pa.R.A.P. 1925. Herein, Appellant states three issues for our review:

I.      Should the PCRA court decision be reversed and remanded where it erroneously focused on what happened at the sentencing hearing and failed to consider [Appellant's] newly discovered fact of state actor juvenile facility illegal abusive conduct that was unknown to [Appellant] and the sentencing court and could have changed the outcome of the sentence[,] which satisf[ies] the exception in 42 Pa.C.S. § 9545(b)(1)(ii)?

[II.]   Should [Appellant's] case be remanded for a new sentence where the sentencing court used an improper sentencing factor to increase his sentence[?]

[III.]  Did the PCRA court err[] when it failed to give [its] reasoning for dismissing [the petition] in [its Rule] 907 notice[,] thereby preventing [Appellant] from giving the court clarification of his claims or a chance to amend any potential claims?

Appellant's Brief at 6 (unnecessary capitalization omitted; some formatting altered).

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, any petition attempting to invoke one of these exceptions must "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final on May 15, 2016, at the expiration of the 30-day time period for seeking review with the Pennsylvania Supreme Court. *See* 42 Pa.C.S. § 9545(b)(3) (stating that a judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); Pa.R.A.P. 1113(a) (directing that "a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days of the entry of the order of the Superior Court sought to be reviewed"). Thus, Appellant had until May 15, 2017, to file a timely petition, making the instant petition filed in 2025 facially untimely. Consequently, for this Court to have jurisdiction to review the merits thereof,

Appellant must prove that he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

Instantly, Appellant argues that he meets the newly-discovered-fact exception of section 9545(b)(1)(ii). Appellant alleges that in September of 2024, he was notified by Attorney Lynn A. Ellenberger "that he had spent time in some very questionable juvenile facilities." Appellant's Brief at 10. Appellant claims that Attorney Ellenberger "conducted her own independent investigation and in September of 2024, [she] informed [Appellant] that he may have claims in civil and criminal court based upon her investigation." *Id.* at 10-11. More specifically, Appellant discovered — presumably, through this investigation by Attorney Ellenberger — that the "physical punishment he suffered while in … juvenile facilities was recently found to be illegal abuse carried out by government officials." *Id.* at 12.

According to Appellant, he was unaware, prior to September of 2024, that the actions committed against him in the juvenile facilities constituted unlawful abuse, and he had no way of discovering this fact in the exercise of due diligence. *Id.* at 14-15. He stresses that he was just a child at the time the abuse took place, and he suffers from mental health disorders. *Id.* at 16. Appellant also argues that it was reasonable for him to presume that the actions of the staff members was lawful, given that they were government actors and he was placed "under their care, custody and control" by the court. *Id.*

- 5 -

Appellant further claims that the "new fact" of his alleged abuse warrants his resentencing. He explains that, at his sentencing proceeding, the court "weighed heavily" the fact that he had been placed in multiple juvenile facilities, but had not reformed his criminal behavior. *Id.* at 18. According to Appellant, the court considered his juvenile placements as an aggravating factor because the court was unaware of the abuse he had suffered at those facilities. He insists that if the court had been "aware of the abuse [he] suffered at the juvenile facilities, the … court would have been precluded as a matter of law from using this factor to increase [his] sentence." *Id.* Appellant reasons that the "physical, emotional[,] and sexual abuse" he endured is the "very same abuse [that] is scientifically proven to contribute to later criminal activity[,]" and very well "could have directly caused the criminality itself." *Id.* (citation to the record omitted). In other words, Appellant contends that the abuse he endured at the juvenile facilities should have been considered by the court as a mitigating sentencing factor because it likely caused, or at least contributed to, his continuing criminal conduct. Thus, Appellant concludes that it was illegal for the court to consider his juvenile placements as an aggravating factor in sentencing him, when this factor should have been properly considered as mitigating evidence.

No relief is due. Initially, we note that Appellant does not offer many specifics about the abuse he purportedly suffered at the juvenile facilities. He only briefly claims, without any elaboration, that "officials … hit him, strip[ped] him naked[,] and verbally assault[ed] him as a means of punishment[,]" and

that he "suffered physical, emotional[,] and sexual abuse…." *Id.* at 16, 18. Appellant does not say when or where this alleged abuse occurred or provide any details or context regarding any specific incidents. Most problematically, Appellant does not state how he discovered that the conduct was unlawful, aside from vaguely saying that Attorney Ellenberger told him that "some" of the facilities in which he was detained were "questionable[,]" *id.* at 10, and that he "recently found" that actions committed against him constituted "illegal abuse." *Id.* at 12.

Without further details regarding what specific conduct Appellant experienced, what information he learned that notified him that he experienced illegal abuse, and how he discovered that information, we cannot ascertain whether Appellant could not have discovered, with the exercise of due diligence, that the acts committed against him were illegal abuse at the time they were occurring, or at any point before September of 2024 when he claims he first learned this "new fact." Appellant was clearly aware of what transpired at these juvenile facilities and, therefore, the conduct itself was not a "new fact" to him. Appellant's argument that he could not have understood that the actions committed against him amounted to illegal abuse because he was a child when the abuse was occurring is unavailing, given that Appellant legally became an adult on August 6, 2011.[1] Appellant does not explain why he could not have at least questioned and investigated, at some earlier time

_____

[1] The record indicates that Appellant was born on August 6, 1993.

during the thirteen years between 2011 and 2024, whether the actions allegedly committed against him in the juvenile facilities constituted unlawful abuse. He also does not elaborate at all on what mental health disorder(s) he has, or how that fact impeded him from discovering the alleged illegality of the conduct committed against him.

Moreover, in arguing that his alleged abuse should have been considered as a mitigating sentencing factor because it likely caused — or at least contributed to — his continuing criminal behavior, Appellant cites two "studies" that he claims show "that abuse as a child causes or significantly raises the probability of criminal activity as an adult." *Id.* at 18. However, the studies he cites were published in 2007 and 2015. *See id.* (citing Les Picker, *Does Child Abuse Cause Crime*, NBER Digest (Jan. 2007); Dr. S.P. Becker & Dr. K.P. Kerig, *Early Abuse and Neglect as Risk Factors for the Development of Criminal and Antisocial Behavior* (Jan. 2015)). Appellant offers no explanation for how he discovered these "studies," or why he could not have found them earlier than 2024, especially when he litigated — with the assistance of counsel — both a direct appeal and a timely PCRA petition in the years after those studies were published. For these reasons, Appellant has not convinced us that he exercised due diligence in discovering that he suffered illegal abuse at the juvenile facilities, which should have been

considered as mitigating evidence at his sentencing proceeding.[2]  Therefore,

the PCRA court did not err in dismissing his instant petition as untimely.

_____

[2] In any event, even if Appellant had met a timeliness exception, we would conclude that he is ineligible for post-conviction relief, as his sentencing claim does not meet any of the eligibility requirements under 42 Pa.C.S. § 9543(a)(2).  Namely, Appellant is not alleging that the court imposed a sentence greater than the lawful maximum, 42 Pa.C.S. § 9543(a)(2)(vii); instead, he is arguing that the court imposed an excessive sentence by improperly considering, as an aggravating factor, his detention in multiple juvenile facilities.  Even if Appellant were correct that it was *improper* for the court to consider this factor because he was allegedly abused at those facilities, he has not demonstrated that it was *illegal* for the court to do so.  Notably, in commenting on Appellant's juvenile placements at the sentencing hearing, the court stated:

> [The Court:] In 2006, at age 12, in Berks County, [Appellant was] adjudicated delinquent, [and] was sent to the Praxis Foundation Boot Camp.  An opportunity, if you will, to maybe have him wake up and seek the right path.  A year later[, he was] adjudicated delinquent and placed at Loysville Youth Detention Center because he violated the probationary disposition imposed in Berks.  Ultimately [he was] placed at Glen Mills, a well-known institution to me, [a] juvenile facility.  And from Glen Mills[,] as a result of [a] violation of the parole or probation there, or while there[, he] was placed at Youth Forestry Camp.
>
> So there have been a multitude of instances where he has been given the opportunity to learn from his past mistakes.  And the ultimate shame here for [the victim] and his family is apparently he was not successful in doing so.

N.T. Sentencing, 10/7/14, at 28-29.  Although Appellant alleges that he was abused at one or more of these facilities, he does not dispute that he was properly placed in detention at each, and that he did not reform his criminal behavior afterwards, which are the factors explicitly considered by the court in regard to Appellant's juvenile placements.  Moreover, the *possible link* between his alleged abuse and his continuing criminal conduct is not *proof* that he necessarily continued to commit crimes because of what transpired at the juvenile facilities where he was detained.  Therefore, we would not
*(Footnote Continued Next Page)*

Appellant also contends that the PCRA court erred when it failed to comply with the requirements of Rule 907(1) that it state in its notice of intent to dismiss the reasons for the dismissal. *See* Appellant's Brief at 21-23; *see also* Pa.R.Crim.P. 907(1) ("If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and **shall state in the notice the**

_____

conclude that the court considered an illegal factor in imposing Appellant's sentence, even if his petition were timely.

We also would disagree with Appellant's assertion that the court significantly relied on his juvenile detentions in fashioning his term of incarceration, or his suggestion that his sentence would have been different had the court known about his alleged abuse during those detentions. The court stressed numerous other factors, aside from Appellant's juvenile placements, that weighed in its decision to impose a lengthy sentence, including: Appellant's presentence report; the facts and evidence presented at trial; statements by witnesses in support of Appellant; statements in support of the victim; the arguments of counsel; Appellant's intentional and planned ambush of the victim that led to the killing; the fact that the Commonwealth's theory was that Appellant shot the bullets that killed the victim; Appellant's flight from the scene and that he was not arrested for approximately a month; the extremely violent nature of the crime; Appellant's criminal history of utilizing violence, beginning at age 11, including bringing a knife to school and also punching his sister in the mouth, knocking out her teeth; his multiple charges and convictions for carrying firearms and delivering narcotics; Appellant's rehabilitative needs; the need for deterrence and retribution for his offenses; the protection of the public; the gravity of the offense, which took the life of the victim; and the fact that Appellant had never had a job, and had supported himself by selling drugs. *Id.* at 25-30. From this record, we would not conclude that the court significantly relied on Appellant's juvenile placements in fashioning his sentence, or that Appellant's sentence would be different had the court known of the abuse he alleges.

- 10 -

***reasons for the dismissal***.") (emphasis added). However, this Court has held that even the complete failure to issue a Rule 907 notice is not reversible error in the case of a patently untimely PCRA petition. ***See Commonwealth v. Pridgen***, 305 A.3d 97, 102 (Pa. Super. 2023), *appeal denied*, 318 A.3d 97 (Pa. 2024). Here, for the reasons stated above, Appellant's petition is clearly untimely; thus, any error in the court's Rule 907 notice would not warrant reversal.

In any event, we discern no error in the court's Rule 907 notice. The notice stated:

> AND NOW, this 1ˢᵗ day of April, 2025, upon consideration of [Appellant's] *pro se* Second (2nd) PCRA Petition filed on March 21, 2025, the [c]ourt having determined from its independent review of the record that [Appellant] is not entitled to relief ***because the Petition is untimely filed, and [Appellant] did not successfully satisfy one of the exceptions to the one-year time limitation pursuant to 42 Pa.C.S.[ §] … 9545(b)(1)***, notice is hereby given to [Appellant] of the [c]ourt's intention to dismiss the Petition without a hearing.
>
> [Appellant] is advised that this Notice pursuant to Pa.R.Crim.P. 907(1), advising him of this [c]ourt's intention to dismiss his Petition filed March 21, 2025 without a hearing, does not itself constitute a final appealable Order. ***[Appellant] is further advised that he may file a response to the proposed dismissal of his Petition filed on March 21, 2025, within twenty (20) days of the entry of this Notice,*** following which this [c]ourt will then make a final determination as to whether [Appellant's] Petition filed on March 21, 2025 will be dismissed without a hearing or whether further proceedings are necessary.

Rule 907 Notice, 4/3/25, at 1 (single page; emphasis added).

Clearly, the PCRA court issued a Rule 907 notice that explained why the court intended to dismiss the petition; namely, because it was untimely and

none of the timeliness exceptions applied. Moreover, the notice informed Appellant of his right to respond, and Appellant timely did so. The PCRA court did not dismiss his petition until receiving and considering Appellant's response. *See* PCRA Court Order, 4/28/25, at 1 (single page) (stating that it "considered all papers filed by [Appellant]…, including but not limited to [his] Response to the 907 Notice of Intention to Dismiss dated April 22, 2025"). Consequently, Appellant's claim the Rule 907 notice was deficient does not warrant relief. *See **Commonwealth v. Pinson**,* 1170 WDA 2024, unpublished memorandum at 5-6 (Pa. Super. filed July 21, 2025) (finding the court's Rule 907 notice adequate where it notified Pinson that it intended to dismiss his petition because it was untimely and met no exception to the time-bar, and informed him of his opportunity to respond);[3] ***Commonwealth v. Smith***, 671 WDA 2018, unpublished memorandum at 7 n.3 (Pa. Super. Aug. 13, 2019) (unpublished memorandum) (rejecting Smith's claim that the Rule 907 notice was inadequate for failing to give sufficient explanation of the reasons for dismissal where the notice said the petition was time-barred).

Order affirmed.

_____

[3] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/23/2025</u>